**UNITED STATES DISTRICT COURT**
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE VALVOLINE COMPANY,
A DIVISION OF ASHLAND INC.,

*Plaintiff,*

*v*

MAGIC QUICK LUBE,

*Defendant.*

Case No. 2:09-cv-10829
Hon. Paul D. Borman

Dale R. Burmeister (P29342)
HARVEY KRUSE, P.C.
*Attorneys for Plaintiff*
1050 Wilshire Drive, #320
Troy, Michigan 48084
(248) 649-7800

**MOTION FOR PRELIMINARY INJUNCTION**
**FOR TRADEMARK AND SERVICE MARK INFRINGEMENT**

Plaintiff moves this Honorable Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an Order providing as follows:

Preliminarily enjoining Defendant, its officers, agents, servants, employees and attorneys and any and all persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, from:

1. Using the mark, trademarks or service marks or any variation thereof or any other trademark confusingly or deceptively similar to Plaintiff's "Valvoline®" trademark, its "**V**" trademark, its We Feature "Valvoline®" mark, or its Maxlife, Durablend, Synpower marks or any other documents, letters, literature, advertisements, or other graphic materials, in a manner, style or form which imitates or is confusingly similar to Plaintiff's registered trademarks and

service marks or otherwise indicates or tends to represent that the Defendant is authorized, associated, affiliated, sponsored or approved by Plaintiff.

2. Preparing and circulating letters, literature, advertisements and other graphic materials which have a manner, style or form which indicates or tends to represent that Defendant is in any manner associated, affiliated, sponsored or approved by Plaintiff.

3. Using, displaying or otherwise presenting the aforementioned marks on its letters, literature, advertisements, graphic materials, outdoor displays, invoices, and the like in a manner, style or form which indicates or tends to represent that Defendant is associated, affiliated, sponsored or approved by Plaintiff.

4. Causing likelihood of confusion, injury to business reputation or dilution of the distinctiveness of the aforementioned marks.

5. Such other relief as is prayed for in Plaintiff's Complaint and for such other order of injunction as is necessary to maintain the status quo until a final hearing on the merits of this case.

6. Requiring that Defendant deliver up to the Court for impoundment during the pendency of this action all advertisements, catalogs, brochures, outdoor displays and other materials in its possession or under its control which carry the mark or marks of Plaintiff.

No prior request for the foregoing relief has been made.

**Conclusion**

Plaintiff seeks a preliminary injunction enjoining Defendant from continuing use of the aforementioned marks owned by Plaintiff.

**CERTIFICATE OF SERVICE**
I hereby certify that Mary Leonard electronically filed the foregoing pleading with the Clerk of the Court via the Electronic Case Filing system and has served Defendant by U.S. Mail.

*s/Dale R. Burmeister*
________________________________

Harvey Kruse, P.C.
1050 Wilshire Drive, Suite 320
Troy, MI 48084-1526
248-649-7800
dburmeister@harveykruse.com

Dated: June 17, 2009

Respectfully submitted,

HARVEY KRUSE, P.C.

By: s / *Dale R. Burmeister*
______________________________

Dale R. Burmeister (P29342)
Attorney for Plaintiff
1050 Wilshire Drive, Suite 320
Troy, Michigan 48084-1526
(248) 649-7800
dburmeister@harveykruse.com

**UNITED STATES DISTRICT COURT**
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE VALVOLINE COMPANY,
A DIVISION OF ASHLAND INC.,

*Plaintiff,*

*v*

MAGIC QUICK LUBE,

*Defendant.*

Case No. 2:09-cv-10829
Hon. Paul D. Borman

Dale R. Burmeister (P29342)
HARVEY KRUSE, P.C.
*Attorneys for Plaintiff*
1050 Wilshire Drive, #320
Troy, Michigan 48084
(248) 649-7800

**BRIEF IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCTION**
**FOR TRADEMARK AND SERVICE MARK INFRINGEMENT**

## CONCISE STATEMENT OF ISSUE PRESENTED

Is The Valvoline Company entitled to a preliminary injunction to protect it from the irreparable harm caused by Defendant's wrongful use of trademarks and service marks of Valvoline?

## TABLE OF AUTHORITIES

### Cases

*Aveeda Corp. v Avita Marketing, Inc.* .................................................................................. 4

*Lone Star Steak & Saloon v Alpha of Virginia, Inc.* ........................................................ 4

*McPherson v Michigan High School Athletic Assocation*, 119 F.3rd 453, 459 (6th Cir 1997)........ 3

*Opticians Association of America v Independent Opticians* of America ...................................... 4

*Photomat Corp. v Photodrive-thru, Inc* ........................................................................... 5

*Rock & Roll Hall of Fame & Museum v Gentile Products*, 134 F.3d, 749, 753 (6 Cir 1998)........ 3

*Unsecured Creditors' Committee of DeLorean Motor Company v DeLorean*.............................. 4

## INTRODUCTION

The following facts are set forth in the Complaint filed in this matter. For the convenience of the Court, the paragraphed numbers set forth below are the same as the some of the paragraphed numbers in the Complaint.

1. Plaintiff, The Valvoline Company, a division of Ashland Inc., is, and was at all times pertinent to this litigation, a Kentucky corporation with its principal place of business in Kentucky.

2. Defendant, Magic Quick Lube, is a Michigan Corporation doing business at 15267 South Dixie Highway, Monroe, MI 48162.

3. The jurisdiction of this Court rests upon the ground that this is a civil action arising under the trademark laws of the United States under the Trademark Act of July 5, 1946, 15 USC §§ 1051, et seq.

4. For many years, Plaintiff has been manufacturing and selling oil products that have unique and distinctive qualities.

5. For many years, Plaintiff has been and is now using the trade and service marks identified below, either alone or in conjunction with other distinctive marks.

6. Plaintiff's said trademarks are registered in the United States Patent Office as follows:

| No. | Registration Date | Mark |
|---|---|---|
| 1,601,798 | June 19, 1990 | Valvoline® |
| 1,955,557 | Feb. 13, 1996 | V® |
| 3091037 | Jan. 6, 2004 | Maxlife® |
| 2137327 | Nov. 25, 1997 | Durablend® |
| 2820051 | Mar. 2, 2004 | Synpower® |

7. Since receiving these trade and service marks from the United States Patent Office, Plaintiff has expended large sums of money in advertising and making known to the public throughout the United States and the world its products bearing these trademarks, either alone or in conjunction with other distinctive words and marks.

8. By reason of the high quality of Plaintiff's products bearing these trademarks, and by reason of the extensive advertising and sale of such products, these trademarks and service marks have come to mean and be understood throughout the United States, including in Michigan, as marks that the goods that can be purchased at the establishment displaying same are distinguishable from other goods of the same class and the public has come to recognize products bearing those trade and service marks as originating with Plaintiff.

9. Defendant is not a current licensee or franchisee of Plaintiff.

10. Defendant, knowing well the rights of Plaintiff in these trade and service marks, and with intent to trade upon the good will of Plaintiff, has adopted and is using these trade and service marks.

11. Defendant has adopted and is using these trade and service marks for the purpose of selling and enticing sales of non-Valvoline product in Michigan.

12. The use by Defendant of the trade and service marks in conjunction with its sale of other products is and has led to confusion and mistakes or to deception of purchasers as to the origin of such goods.

13. Defendant is also using Plaintiff's trade and service marks to attract potential customers based on Plaintiff's reputation not only for quality products, but also for superior service and quality control at stores or outlets that sell and install Valvoline products.

14. While Defendant wrongfully uses the trade and service marks of Plaintiff to entice potential customers, Plaintiff has absolutely no control over Defendant's present or future service techniques, warranties and the like, causing immediate as well as foreseeable harm to Plaintiff's good name and reputation.

15. Defendant’s use of these marks constitute acts of infringement.

16. Despite Plaintiff’s repeated demands that Defendant cease and desist from its infringement, Defendant has refused to discontinue the use of the name and marks of Valvoline in connection with its business and has continued to violate the rights of Plaintiff, to mislead the public, and to trade unfairly upon Plaintiff’s reputation and good will.

17. Defendant’s acts of infringement have caused and will result in further irreparable injury to Plaintiff and its trade and service marks if Defendant is not restrained by this Court from further violations of Plaintiff’s rights and Plaintiff has no adequate remedy at law.

18. Defendant’s use of these marks constitutes a clearcut violation of 15 USC § 1114(1).

19. The use of Plaintiff’s marks identified above constitutes a knowing and willful passing off and deception upon the citizens of Michigan.

20. The actions described above by Defendant constitute unfair competition in the trade by reason of Defendant’s use of Plaintiff’s marks.

21. These acts of unfair competition have caused and are continuing to cause irreparable injury to the reputation of Plaintiff which it has established over many, many years and unless the use of same is restrained, Defendant will continue these acts to the detriment of Plaintiff and the consuming public.

**ARGUMENT**

Four factors are relevant to the availability of injunctive relief: "1) Whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuance of the injunction. *Rock & Roll Hall of Fame & Museum v Gentile Products*, 134 F.3d, 749, 753 (6 Cir 1998); see also *McPherson v Michigan High School Athletic Assocation*, 119 F.3rd 453, 459 (6th Cir 1997) *en banc*. In the Sixth Circuit, these factors are not "prerequisites to the issuance of [an] injunction; they are factors to be "balanced" by the Court. See *Unsecured Creditors' Committee of DeLorean Motor Company v DeLorean*, 755 F.2d 1223, 1229 (6th Cir 1985). Thus, a strong showing as to likelihood of success on the merits may justify entry of a preliminary injunction upon a relatively lesser showing of irreparable harm; conversely, proof that the moving party will suffer significant irreparable injury may justify a preliminary injunction on a lesser showing of success on the merits. See *id.* at 1299 (holding that the likelihood of success that need be shown will vary inversely with the degree of injury the plaintiff will suffer absent an injunction).

Preliminary injunction relief is routinely granted in trademark cases on the basis of the important presumption that consumer confusion constitutes irreparable harm to the goodwill and reputation of the trademark owner. See, e.g., *Lone Star Steak & Saloon v Alpha of Virginia, Inc.*, 43 F.3rd 922 (939) 4th Cir 1995 ("[W]e recognize that irreparable injury regularly follows from trademark infringement.")

**1. Valvoline Has A Substantial Likelihood Of Success**

There really is no dispute, based on the affidavit of Mr. Rozanski (attached as **Exhibit A**) and the photographs that accompany this brief (attached as **Exhibit B**), that Defendant is utilizing the trade and service marks of Plaintiff.

**2. Valvoline's Injury Is Irreparable And The Balance Of Hardships Tips Decidedly In Valvoline's Favor**

Courts have long adopted a presumption that irreparable injury "follows as a matter of course" from the infringement or dilution of valuable trademark rights. *Opticians Association of American v Independent Opticians* of America, 920 F.2d 187,196 (3rd Cir 1990). Because of the inherent difficulty of placing a value on the damage to such intangibles as goodwill or reputation of a business, courts routinely grant in injunctions in trademark actions. See, e.g., *Aveeda Corp. v Avita Marketing, Inc.*, 706 F.2d 1419, 1431 (d. min. 1989)("Any hardship caused by the preliminary injunction may justly fall on the parties which consciously decided to dress their goods for the market in a manner 'so near to [a] successful rival that the public may fail to distinguish between them.'")

The presumption of irreparable harm or injury is appropriate in this case. If Defendant is entitled to tarnish the trademarks owned by Valvoline by displaying them on its outdoor signage, on its invoices and representing to the public that it is exclusively utilizing Valvoline products when it is not, Valvoline will suffer irreparable damage to its goodwill and reputation by the loss of control over its trademark. Plaintiff's "lack of ability to control the nature and quality of services provided under an infringing …. mark …. constitutes an irreparable injury." *Photomat Corp. v Photodrive-thru, Inc.*, 425 F.Supp. 693, 711(d.n.j. 1997). Under these circumstances, the balance of hardship decidedly tips in Valvoline's favor. While the injury to Valvoline is immeasurable and irreparable, the only "harm" to Defendant will be an injunction against its

attempt to injure or damage the trademarks and service marks of Valvoline. No legitimate purpose is served by this conduct.

**3. An Injunction Would Not Harm Others**

Valvoline's injury is incalculable by comparison to any harm that might be suffered by others. Valvoline has invested substantial sums in the worldwide development of its valuable trademarks and service marks and Defendant's attempt to use these marks imposes an immeasurable threat to Valvoline's goodwill. On the other hand, enjoining Defendant's wrongful use of these marks causes no harm to others.

**4. The Public Interest Favors An Injunction**

Finally, the public interest heavily favors entry of a permanent injunction in this case. Clearly, Valvoline's customers and the public generally have a "strong interest" in avoiding public confusion regarding the products being offered for sale. In this case, Defendant's inappropriate and unlawful use of Valvoline's trade and service marks associates Plaintiff's reputation with what is surely a less expensive and lower quality product manufactured by unknown entities. As a result, the public interest is served, not impaired, if an injunction is issued.

## CONCLUSION

Based upon the photographs, the attached Affidavit of Mark P. Rozanski, and the arguments and legal support for same set forth above, the Court should grant a preliminary injunction restraining and enjoining Defendant from using in any way whatsoever the trade and service marks of the The Valvoline Company. Valvoline further requests that the Court order Defendant to turn over to the Court all such materials it has in its possession. Such a transfer is the only way that Valvoline can be certain that Defendant will not otherwise utilize its trade and

service marks. Valvoline would also ask that the Court impose a $250.00 per day penalty on Defendant for each day after the preliminary injunction is entered that Defendant fails to comply

**CERTIFICATE OF SERVICE**
I hereby certify that Mary Leonard electronically filed the foregoing pleading with the Clerk of the Court via the Electronic Case Filing system and has served Defendant by U.S. Mail.

*s/Dale R. Burmeister*
______________________________

Harvey Kruse, P.C.
1050 Wilshire Drive, Suite 320
Troy, MI 48084-1526
248-649-7800
dburmeister@harveykruse.com

Dated: June 17, 2009

Respectfully submitted,

HARVEY KRUSE, P.C.

By: s / *Dale R. Burmeister*
______________________________

Dale R. Burmeister (P29342)
Attorney for Plaintiff
1050 Wilshire Drive, Suite 320
Troy, Michigan 48084-1526
(248) 649-7800
dburmeister@harveykruse.com