UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VALVOLINE COMPANY,

        Plaintiff,

vs.

MAGIC QUICK LUBE,

        Defendant.

_____/

Civil Action No.
09-CV-10829

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE


## OPINION AND ORDER GRANTING PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION

### I.  INTRODUCTION

This is a trademark infringement and unfair competition case.  Plaintiff Valvoline Company, the owner of the trademarks and service marks associated with the Valvoline brand and line of products, claims that Defendant Magic Quick Lube, an oil change business located in Monroe, Michigan, is using Valvoline trademarks and service marks without Plaintiff's permission in violation of 15 U.S.C. §§ 1114 and 1125.

The Complaint, which was filed on March 5, 2009, contains two counts: trademark infringement and unfair competition.

Now before the Court is Plaintiff's Motion for Preliminary Injunction for Trademark and Service Mark Infringement, which was filed on June 17, 2009 [docket entry 5].  Defendant filed a response on September 29, 2009.  Plaintiff has not filed a reply.  On October 6, 2009, the Court held a hearing on this matter.  At the hearing, each party called one witness.  Mark Rozanski, Valvoline's Territory Business Manager, testified on behalf of Plaintiff.  Norman Saad, the manager of Magic

Quick Lube, testified on behalf of Defendant.  For the reasons that follow, and having thoroughly reviewed the parties' motion papers and the evidence submitted by the parties in this matter, the Court will grant Plaintiff's motion.

## II.  PRELIMINARY FINDINGS OF FACT

### A.

For many years, Plaintiff has manufactured and sold oil products that have the following trademarks: Valvoline®, V®, Maxlife®, Durablend®, and Synpower®. Hr'g Tr. at 12, 18. Plaintiff has expended large sums of money in advertising and making its products known to the public.  *Id.* at 18.

### B.

Defendant currently uses some Valvoline oil products at its oil change business and displays a large Valvoline sign on its storefront and small Valvoline signs at the entrances to its service bays. *See* Hr'g Ex. 1.  In addition, Rozanski testified that (1) "there is a variety of [Valvoline] signage inside the [Defendant's] building" and (2) Defendant's oil change window stickers feature a Valvoline logo.  *See* Hr'g Tr. at 11; Hr'g Ex. 1.

### C.

A non-franchisee of Plaintiff may utilize Valvoline signage only if (1) 100% of the bulk oil product carried by the franchisee is Valvoline product and (2) 85% of the lubricants carried by the franchisee are Valvoline products. Hr'g Tr. at 8.  These products must be purchased through Vesco Oil Corp. ("Vesco"), Plaintiff's exclusive distributor in Michigan. *Id*. at 9.

### D.

Defendant, at one time, had a written contract with Vesco for the purchase of Valvoline oil

products. *Id*. at 29.  David Stratton was the Vesco representative with whom Defendant dealt.  *Id*.

at 30.  Defendant's written contract with Vesco ended two years ago, at which time Defendant

stopped carrying Valvoline products and took down its Valvoline signage.  *Id*. at 30-31.

About one year after Defendant's contract with Vesco ended, Defendant started purchasing

some Valvoline products again.  *Id.* at 31.  While Defendant did not deal with a Vesco representative

when it began re-buying Valvoline products from Vesco, nor was there a written contract in place

between the parties, Saad testified that he had discussions with Stratton regarding Valvoline signage.

*Id*. at 31-32.  When asked to describe the nature of his discussions with Stratton, Saad testified as

follows:

> I told him [Stratton] that I miss Valvoline.  I wish I could have it back.  He
> [Stratton] said Norm, you can have it back.  As long as you buy . . . within
> four, five weeks 150 to 200 gallons of Valvoline oil from us, you can have
> your sign back, put it up, but take off the we feature.  You're not an exclusive
> Valvoline store.  It was just a simple showing that you do have Valvoline
> products in the store.  I said thank you, and we did business from there on
> out.

*Id*. at 32.  Relying on this discussion, Defendant has displayed, and presently continues to display,

a large Valvoline sign on its storefront.

**E.**

Stratton is no longer employed by Vesco.  *Id*. at 35.  Since Stratton's departure about one and

a half or two years ago, a Vesco representative by the name of Jennifer has visited Defendant "on

a number of occasions."  *Id.* at 35-36.  Each time she visited, Jennifer told Defendant that it must

remove its Valvoline signage because it does not have a contract with Vesco and therefore does not

have permission to utilize Valvoline signage.  *Id*.  Moreover, on October 14, 2008, Plaintiff sent

Defendant a cease and desist letter demanding the same.  *See id*.  This letter is not in the record.

**F.**

On September 2, 2009, Rozanski purchased an oil change at Defendant's oil shop. *Id*. at 11;

Hr'g Ex. 2.  Upon arrival at Defendant's shop, Rozanski was presented with a choice between four

varying grades of Valvoline oil product and was asked to choose which grade he desired.  Hr'g Tr.

at 12.  Rozanski selected Valvoline's economy grade oil, which is called 5W30.  Hr'g Tr. at 13.

Subsequently, Rozanski had the oil that was put in his car analyzed by Valvoline's Fluid Analysis

Laboratory.  *See* Hr'g Ex. 3.  The laboratory report reads, in relevant part, as follows:

> In regard to the samples . . . submitted on 9/10/09, the following results are
> conclusive:
>
> \* \* \* \*
>
> The results of this sample's formulation show abnormal results.   A
> significant decrease in Sodium and a slight increase in Boron, as compared
> to the Valvoline Premium Conventional SAE 5w30 motor oil formulation
> requirements, indicate a possible mixure or use of another fluid in service.
> The Calcium level is also slight lower that expected for this product.  It is
> strongly advised to check for possible source of contamination or use of
> another product, other than Valvoline and resample to establish trend.

Hr'g Ex. 3.  When asked what conclusion he draws from these results, Rozanski testified that "if it

is Valvoline, it is severely diluted with something else."  Hr'g Tr. at 14.

### III.  LEGAL STANDARD GOVERNING THE
### ISSUANCE OF PRELIMINARY INJUNCTIONS

As stated by the Sixth Circuit,

> "[t]he purpose of a preliminary injunction is merely to preserve the relative
> positions of the parties until a trial on the merits can be held."  Given this
> limited purpose, "a preliminary injunction is customarily granted on the basis
> of procedures that are less formal and evidence that is less complete than in
> a trial on the merits."  Accordingly, a party "is not required to prove his case
> in full at a preliminary injunction hearing and the findings of fact and
> conclusions of law made by a court granting the preliminary injunction are
> not binding at trial on the merits."

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citations omitted). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). When considering a motion for preliminary injunction, a district court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits;
>
> (2) whether the movant would suffer irreparable injury without the injunction;
>
> (3) whether issuance of the injunction would cause substantial harm to others; and
>
> (4) whether the public interest would be served by the issuance of the injunction.

*Tenke Corp.*, 511 F.3d at 542. According to the Sixth Circuit,

> [t]hese four considerations are "factors to be balanced, not prerequisites that must be met." The district judge "is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." However, "it is generally useful for the district court to analyze all four of the preliminary injunction factors, especially since our analysis of one of the factors may differ somewhat from the district court's."

*Id.* (citations omitted).

## IV. DISCUSSION

The Court addresses each of the four factors, in turn, below.

### A. Plaintiff's Likelihood of Success on the Merits

Federal trademark infringement claims are governed by 15 U.S.C. § 1114(1).  Under this provision, trademark infringement occurs if a person, acting without the permission of a trademark's owner, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1).

The Court will first address whether there is a strong likelihood that Defendant's use of Plaintiff's trademarks is unauthorized.  The Court will then determine whether there is a strong likelihood that Defendant is using Plaintiff's trademarks in a manner that is likely to cause confusion.  Finally, the Court will address Defendant's defense – the applicability of the "first sale" doctrine to this case.

### 1.  Unauthorized Use

Defendant argues that its use of Plaintiff's trademarks is authorized because Stratton told Saad that Defendant could display its Valvoline signage notwithstanding the fact that the parties' dealings were no longer governed by a written contract.  Plaintiff, on the other hand, argues that even if Stratton, at one time, authorized Defendant's use of Valvoline signage, the authorization has been effectively revoked, repeatedly.

The Court agrees with Plaintiff.  The uncontroverted evidence in this case demonstrates that Defendant's current use of Valvoline signage is not authorized.  Although Defendant currently purchases some Valvoline oil product from Vesco, the parties' dealings are not governed by a written contract.  Therefore, Plaintiff has no way of ensuring that Defendant carries a sufficient quantity of Valvoline products (100% bulk oil and 85% of lubricants), thereby allowing it to utilize

Valvoline signage in accordance with Plaintiff's policy. Moreover, while Stratton at one time gave Defendant permission to display Valvoline signage, Rozanski testified—and Saad admits—that this permission has been revoked. Based on the evidence presented at the hearing, then, there is—at a minimum—a strong likelihood that Defendant is using Plaintiff's trademarks without Plaintiff's permission.

**2. Likelihood of Confusion**

"'Likelihood of confusion' is the basic test of . . . federal statutory trademark infringement." J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 23:1 (4th ed. 2009). Ordinarily, courts in this circuit consider eight factors to determine whether confusion is likely. *See Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982).[1] However, as stated by Professor McCarthy and quoted with approval by the Sixth Circuit in *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1191 (6th Cir. 1988), "[c]ases where a defendant uses an identical mark on competitive goods hardly ever find their way into the appellate reports. Such cases are 'open and shut' and do not involve protracted litigation to determine liability for trademark infringement." McCarthy, *supra*, at § 23:20. This case presents an "open and shut" situation because the evidence is undisputed that Defendant uses marks that are identical to Plaintiff's.

**3. The First Sale Doctrine**

As stated by the Sixth Circuit,

> trademark law contains a "first sale" exception that provides a defense to claims of infringement. Under the exception, resale by the first purchaser of

---

[1] Those eight factors are as follows: (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines. *See Frisch's Rests., Inc.*, 670 F.2d at 648.

> the original trademarked item is generally neither trademark infringement nor unfair competition.  The rationale for the rule "is that trademark law is designed to prevent sellers from confusing or deceiving consumers about the origin or make of a product, which confusion ordinarily does not exist when a genuine article bearing a true mark is sold."

*Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 369 (6th Cir. 2007) (citations

omitted).  Moreover, as a corollary to the first sale doctrine,

> [t]he right to resell a genuine branded item in an unchanged state . . . carr[ies] with it the right to advertise to others that the dealer is selling those branded products, so long as such advertising does not mislead customers into mistakenly believing that the dealer is an agent or an "authorized distributor" of the manufacturer.

McCarthy, *supra*, at § 25:43.  However, "the first sale doctrine does not apply 'when an alleged

infringer sells trademarked goods that are materially different than those sold by the trademark

owner.'" *Brilliance Audio, Inc.*, 474 F.3d at 369 (quoting *Davidoff & CIE, S.A. v. PLD Int'l Corp.*,

263 F.3d 1297, 1302 (11th Cir.2001)).[2]  By extension, then, the right to advertise a genuine branded

item applies only if the item is being resold "in an unchanged state."  McCarthy, *supra*, at § 25:43.

Defendant argues that its "advertisement of Valvoline product . . . does not mislead or

confuse the public" because "there is absolutely no indication that Defendant 'only' or 'exclusively'

sells and uses Valvoline products."  Plaintiff, on the other hand, argues that Defendant's use of

Plaintiff's trademarks "give[s] . . . the impression that [Defendant] is somehow supported by

Valvoline, that people from Valvoline oversee [Defendant's] operation in some way, or [that] this

is a Valvoline exclusive or close to exclusive store given the size of the sign."

---

[2] "To be material, a difference must be 'one that consumers consider relevant to a decision about whether to purchase a product.'  But, '[b]ecause a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products.'"  *Brilliance Audio, Inc.*, 474 F.3d at 369 (quoting *Davidoff & CIE, S.A.*, 263 F.3d at 1302).

The Court need not determine whether Defendant's use of Plaintiff's trademarks "mislead[s] customers into mistakenly believing that the dealer is an agent or an 'authorized distributor' of the manufacturer," McCarthy, *supra*, at § 25:43, because the evidence in this case reveals that there is a strong likelihood that Defendant—on at least one occasion—sold Valvoline product that is "materially different" than the product sold by Plaintiff.  As discussed above, the oil put in Rozanski's car was subsequently analyzed in a laboratory and the analysis showed "abnormal results"; specifically, "[a] significant decrease in Sodium," "a slight a increase in Boron," and a "slightly lower than expected" calcium level.  Hr'g Ex. 3.  Therefore, there is a strong likelihood that the first sale doctrine does not apply in this case.  By extension, Defendant is not entitled to advertise that it sells Valvoline products because the right to advertise attaches only if the item is being sold in an "unchanged state," a requirement that is unsatisfied here.[3]

For the reasons discussed above, the Court finds that there is a strong likelihood that Defendant, acting without the permission of Plaintiff, "use[s] in commerce [a] reproduction . . . of [Plaintiff's] registered mark in connection with the sale, offering for sale, . . . [and] advertising of . . . goods" in a manner that is "likely to cause confusion."  *See* 15 U.S.C. § 1114(1).  Accordingly, the first factor considered by the Court in determinating whether a preliminary injunction should issue—whether Plaintiff has a strong likelihood of success on the merits—weighs in favor of the issuance of an injunction.

### B.  Irreparable Injury Without a Preliminary Injunction

_____

[3] If the Court was required to determine whether Defendant's use of Plaintiff's trademarks misleads customers, the Court would respond "yes."  The large Valvoline sign on the building, even with the "we feature" blocked out, combined with the other signage, clearly leads a customer to mistakenly believe that Defendant is a Valvoline agent or authorized distributor.

"[M]any courts have stated that where the plaintiff makes a strong showing of likely confusion, irreparable injury follows as a matter of course." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990).  As stated by the Second Circuit,

> [f]or many years we have consistently held that a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product. Our cases clearly say that establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm.

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir. 1986) (citations omitted).

Here, because there is a strong likelihood that Defendant is using Plaintiff's trademarks in a manner that is likely to cause confusion, "irreparable injury follows as a matter of course." *See Opticians Ass'n of Am.*, 920 F.2d at 196.  This conclusion is especially warranted in this case, and this factor weighs heavily in favor of the issuance of a preliminary injunction, because there is a strong likelihood that Defendant is using contaminated Valvoline oil product while representing to the public that the oil is unaltered.  Accordingly, irreparable harm to Plaintiff's reputation is particularly likely in this case unless the Court issues a preliminary injunction.

### C.  Substantial Harm to Others if a Preliminary Injunctions Issues

Plaintiff states that issuing a preliminary injunction will cause no harm to others.  Defendant states that "there are no particular third parties that would be affected" either way.  The Court finds that Defendant's conduct harms customers thinking they have purchased Valvoline product, while they purchase diluted Valvoline product at best.

### D.  The Public Interest

Plaintiff argues that

> the public interest heavily favors entry of a permanent injunction in this case. Clearly, Valvoline's customers and the public generally have a "strong interest" in avoiding public confusion regarding the products being offered for sale. In this case, Defendant's inappropriate and unlawful use of Valvoline's trade and service marks associates Plaintiff's reputation with what is surely a less expensive and lower quality product manufactured by unknown entities.  As a result, the public interest is served, not impaired, if an injunction is issued.

Defendant, on the other hand, argues that "[t]here really is not a strong public interest regardless of a preliminary injunction."

The Court agrees with Plaintiff and finds that this factor weighs in favor of the issuance of a preliminary injunction.  Simply put, Defendant advertises that it sells Valvoline oil but the laboratory analysis discussed above reveals, as Rozanski testified, that "if it is Valvoline, it is severely diluted with something else."  Hr'g Tr. at 14.

## V.  CONCLUSION AND ORDER

For the reasons discussed above, and having balanced the four factors considered by courts in determining whether a preliminary injunction should issue, the Court finds that the scale tips heavily in favor of the issuance of a preliminary injunction in this case.  Accordingly,

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction for Trademark and Service Mark Infringement [docket entry 5] is granted.

IT IS FURTHER ORDERED that Defendant shall remove—and is preliminarily enjoined from using in commerce—any and all signage, window stickers, and other advertising and

promotional materials bearing a Valvoline trademark.


IT IS FURTHER ORDERED that Defendant shall deliver to Plaintiff any and all signage, invoices, window stickers, business cards, and other advertising or promotional materials in the possession of Defendant or under their control bearing any of the infringing marks or variations thereof.


IT IS FURTHER ORDERED that Defendant shall comply with this Opinion and Order within seven days of today's date.


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 29, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 29, 2009.


s/Denise Goodine
Case Manager